**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| TROY L. JONES, | : |
| Plaintiff, | : CIVIL ACTION NO. 07-3878 (MLC) |
| v. | : **MEMORANDUM OPINION** |
| CVS PHARMACY, | : |
| Defendant. | : |

**COOPER, District Judge**

Plaintiff – Troy L. Jones – commenced this action alleging a Title VII claim for racial discrimination.  (Dkt. entry no. 1.)  Defendant – CVS Pharmacy ("CVS") – moves for summary judgment in its favor pursuant to Federal Rule of Civil Procedure ("Rule") 56.  (Dkt. entry no. 24.)  Plaintiff opposes the motion.  (Dkt. entry no. 30.)  The Court has analyzed this motion based upon the written materials and heard oral argument on December 12, 2008.  The Court, for the reasons stated herein, will grant the motion.

## BACKGROUND

**I.   Plaintiff's Position and Responsibilities at CVS**

Plaintiff, an African-American, began employment with CVS in November 1999.  (Dkt. entry no. 19, Am. Compl. at 3.)  Over the course of his employment, plaintiff received positive performance reviews, and was promoted to the position of store manager.  (Id.; dkt. entry no. 30, Pl. Br. at 3-4.)  Plaintiff, in 2003, received a company award presented to the top ten percent of

store managers throughout the country. (Am. Compl. at 3; Pl. Br. at 3-4.)

Plaintiff was assigned to store no. 464 in Plainfield, New Jersey as store manager in approximately August 2005. (Pl. Br. at 4.) Store no. 464 was designated a "focus store" because of its history of loss prevention ("LP") violations, and was subject to increased auditing and attention. (Id.) Plaintiff was the only African-American management level employee at the store. (Am. Compl. at 3.) As manager, plaintiff tracked and reported employees' LP violations. (Pl. Br. at 4-5.) He contends that he reported "countless" LP violations committed by the store's assistant managers, including: (1) suspicions that a cashier was borrowing money from the register; (2) repeated theft of merchandise and property of co-workers; (3) failure to balance cash tills from the registers at the conclusion of a shift; (4) failure to report customer theft to management or law enforcement; (5) failure to count impressed cash in registers; and (6) leaving the pharmacy unattended for over two hours. (Am. Compl. at 3; Pl. Br. at 5.)

Plaintiff also was responsible for ensuring that store receipts were prepared, stored in the safe, and deposited at the bank on a daily basis according to the following LP procedures:

> a. One of the managers or supervisors (Store Manger, an Assistant Store Manger, or a Shift Supervisor) prepares the deposit, signs a "Deposit Log," and then places the deposit into the store safe until it can

> be transported to the bank.  This can be done either
> at the end of a day or the following morning.
>
> b.  A manager must transport the deposit to the bank.
> The manager first signs the Deposit Log as
> transporter, and a second employee visually verifies
> the deposit and signs the Deposit Log.  The manager
> and second employee then transport the deposit to the
> bank and place it in the bank's drop box.  The
> manager and second employee are required to return
> immediately to the store.
>
> c.  There should never be more than one deposit
> stored in the safe, and thus no more than one deposit
> should be transported to the bank at a time.
>
> d.  Usually the bank will credit the deposit and
> issue a stamped deposit slip the following day, and
> the manager who transports the next day's deposit the
> next day usually picks up the verified deposit slip
> from the previous day's deposit.
>
> e.  The Store Manager verifies in the store computer
> that the bank credited the deposit.

(Dkt. entry no. 24, Def. Br. at 4-5; see dkt. entry no. 24, DeAgazio Decl., Ex. 6, 3-13-08 Jones Dep. at 45-54, 81-83.)[1]

## II.  Missing Bank Deposit Incidents

Plaintiff was involved in two separate incidents regarding violations of the bank deposit procedures.  The first incident involved two deposits plaintiff asserts he dropped in the bank's deposit box on February 11, 2006.  (Jones Dep. at 54-63.) Although plaintiff had signed the Deposit Log as the transporter of both deposits, plaintiff's district manager received notice on February 16, 2006, that the one of the deposits – the February 9,

---

[1]  Plaintiff has not contested CVS's statement of material facts.  (See generally Pl. Br.)

2006, deposit ("2-9-06 deposit") – allegedly transported by plaintiff in the amount of $6,794.93, had not been credited by the bank.  (Dkt. entry no. 24, Detoma Decl. ¶¶ 2 & 3; id., Ex. A, 2-26-06 e-mail.)  Plaintiff was interviewed about the missing deposit on February 20, 2006, and claimed that he dropped the 2-9-06 deposit at the bank.  (Jones Dep. at 62-71; DeAgazio Decl., Ex. 8, 2-20-06 Jones Stmt.)  On the following day – February 21, 2006 – the bank credited the 2-9-06 deposit.  (Jones Dep. at 73; Detoma Decl. ¶ 4.)  Plaintiff contends that "[t]he bank stated an error and marked the deposit as of February 19, 2006," and that he "was cleared of any wrongdoing for this LP issue."  (DeAgazio Decl., Ex. 1, 10-9-06 EEOC Charge of Discrimination ("EEOC Charge").)  Plaintiff, as a result, was issued a "Coaching and Counseling Card" in April 2006, noting that all deposits must be transported by two employees the day after the deposit is prepared at the store, and plaintiff had improperly transported the 2-9-06 deposit on his own.  (Id., Ex. 9; Jones Dep. at 84-85.)  Plaintiff was put on probation, and told he would face automatic termination if such an event reoccurred.  (Pl. Br. at 6.)  A Caucasian assistant store manager employed at store no. 464 was also cautioned for similar violations of the LP bank transportation policies at this time.  (Def. Br. at 6; Detoma Decl., Ex. B.)

    The second incident involved a June 23, 2006, deposit ("6-23-06 deposit") that was not credited by the bank.  On the

4

evening of June 24, 2006, there were allegedly two deposits, prepared by Assistant Store Manager Michael Kelly, contained in the store's safe: (1) the 6-23-06 deposit in the amount of $5,694.46, and (2) the deposit for June 24, 2006 ("6-24-06 deposit") in the amount of $6,000.43. (Dkt. Entry no. 24, Austin Decl., Ex. A, 6-23-06 Deposit Log; id., Ex. B, 6-24-06 Deposit Log.)  Plaintiff, who reported for work that day at 10:00 P.M., was the only employee during his shift with access to the safe. (Jones Dep. at 118-24, 133-34.)  Plaintiff, at the conclusion of his shift, initialed the Deposit Log for the 6-24-06 deposit, and transported the deposit to the bank.  (Id. at 125-27; Austin Decl., Ex. B, 6-24-06 Deposit Log.)  The 6-23-06 deposit, however, left the store's safe, but was not credited by the bank, and is still missing.  (Austin Decl. ¶ 2.)  A transporter did not initial the Deposit Log for this deposit.  (Id., Ex. A, 6-23-06 Deposit Log.)

CVS was not notified of the missing 6-23-06 deposit until plaintiff had completed his final shift at store no. 464.  (Def. Br. at 8-9.)  Plaintiff had previously requested to be transferred to Georgia, and his last day at store no. 464 was June 27, 2006.  (Jones Dep. at 91-97.)  As such, CVS was not able to commence an investigation until after plaintiff had left. (Def. Br. at 8-9.)  Risk LP Manager Craig Austin telephoned plaintiff several times to question him about the payment, but only reached plaintiff on one occasion.  (Austin Decl. ¶ 4.)

According to Austin, plaintiff stated he transported one of the deposits to the bank, and abruptly ended the call.  (Id.) Plaintiff did not return Austin's additional calls, or answer requests to come in for an interview.  (Id.)  Kelly, the preparer of the deposits, was subsequently issued a "Coaching and Counseling" card for failing to transport the missing 6-23-06 deposit. (Detoma Decl. ¶ 7.)  The card stated that if Kelly "fails to transport the deposit within the [CVS] guidelines, he will be terminated from CVS Pharmacy."  (Detoma Decl. ¶ 7; id., Ex. C.)

Plaintiff stated that he arrived in Georgia on July 10, 2006.  (Jones Dep. at 107.)  Despite having arranged a start date with CVS on or about July 1, 2006, plaintiff did not contact the Atlanta-based District Manager until some time between July 11, 2006 and "late" July 2006.  (Id. at 135-43; DeAgazio Decl., Ex. 10, 4-26-06 letter (confirming 7-1-06 start date).)  Plaintiff had no contact with the company, other than his brief call with Austin, until this time.  (Jones Dep. at 141-42.)

When plaintiff reported to work in Georgia on August 2, 2006, two Atlanta-based Risk LP Managers were waiting to speak to him.  (Id. at 144-46; DeAgazio Decl., Ex. 12, 3-13-08 Daily Dep. at 39-40, 44.)  The New Jersey LP managers had contacted the Atlanta LP managers to explain the history of missing deposits at store no. 464, and ask that the Atlanta managers question plaintiff regarding the missing 6-23-06 deposit.  (Austin Decl. ¶

6

5; Daily Dep. at 25-27.)  The Atlanta managers commenced the interview of plaintiff by asking about the 2-9-06 missing deposit, which plaintiff asserts made him feel "insulted" because he had been "cleared" of liability on that issue.  (Jones Dep. at 145-48.)  After only ten minutes, and before being questioned about the 6-23-06 deposit, plaintiff walked out of the interview. (Id. at 145.)[2]

### III. Plaintiff's Termination

Plaintiff understood that his employment with CVS was terminated as a result of walking out of the interview.  (Id. at 151-54.)  Plaintiff was sent a formal termination letter, dated September 6, 2006, stating:

> During the process of your recent transfer from Store #0464 in New Jersey, CVS discovered that a deposit that should have been made just before you left New Jersey was missing.  When you arrived at your new store in Georgia, two [LP] Managers attempted to question you about the missing deposit, but you refused to cooperate and abruptly left the interview after only a few minutes.
>
> As stated in CVS's employee handbook, failure to cooperate with any legal search or investigation may be grounds for the termination of your employment. Particularly as a Store Manager, your cooperation with [LP] Department investigations is critically important. Based on your refusal to answer the investigators' questions, and your decision to leave

---

[2] At his deposition, plaintiff first stated he could not recall if he transferred both deposits.  (Jones Dep. at 128-30.) Plaintiff later stated that he believed he only transferred the 6-24-06 deposit, and claimed he could not recall what happened to the 6-23-06 deposit, or why he had not also transported that deposit.  (Id. at 132-33.)

>     the interview abruptly, CVS hereby terminates your
>     employment effective immediately.

(DeAgazio Decl., Ex. 13, 9-6-06 letter.)  Upon his hiring in November 1999, plaintiff had received a copy of CVS's employee handbook.  (Jones Dep. at 16-17, 162-64.)  Plaintiff acknowledges that he was aware the handbook states that employees could be terminated for "interfering with or failing to cooperate with any legal search or investigation."  (Id.; DeAgazio Decl., Ex. 14, Employee Handbook.)  Plaintiff also signed an acknowledgment that he received an additional copy of the handbook on February 8, 2006.  (Id., Ex. 15, 2-8-06 Acknowledgment.)

### IV.   **Employment Discrimination Claim**

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 9, 2006, claiming he was subjected to discriminatory discharge based on his race. (EEOC Charge.)  Plaintiff alleged that, in July 2006, he moved his family to Georgia after CVS approved his transfer, but when he reported for work in August 2006, he was told "that no position was available in the store," and was then "interrogated by [LP] personnel" about the 2-9-06 missing deposit.  (Id.)  He contends that in New Jersey "Assistant Managers . . . all are non-Black, each has had numerous LP issues that include, deposit discrepancies, missing cash and/or were video taped stealing cash."  (Id.)  Plaintiff further contends that he "reported each occurrence to higher management, yet none

8

listed were discharged.  These were all [LP] issues, of non-Black management personnel, whose performances were excused." (Id.)

The EEOC investigated the charge and determined that "the evidence fails to indicate that a violation of the law occurred." (DeAgazio Decl., Ex. 2, 3-1-07 EEOC Dismissal and Notice of Rights.)  The EEOC further stated that CVS "provided a legitimate, non-discriminatory reason for [plaintiff's] termination.  There is no evidence to support that others, not of [plaintiff's] race, who failed to participate in a loss prevention investigation, would not have been terminated for failing to participate in the investigation." (Id.)

Plaintiff filed the complaint, pro se, in state court on or about May 31, 2007, alleging, inter alia, wrongful termination, and CVS removed the action on August 14, 2007.  (Dkt. entry no. 1, Rmv. Not. & Compl.)  Plaintiff filed an amended complaint on December 27, 2007, alleging one count of discriminatory discharge on the basis of his race.  (See Am. Compl.)  CVS alleges that plaintiff was not terminated because of his race, but because he failed to take part in the LP investigation regarding the missing 6-23-06 deposit. (Def. Br. at 13.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment  is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Id. The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e)(2). A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

10

Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

**II.   The Plaintiff's Title VII Claim**

Title VII prohibits employment discrimination because of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Plaintiff alleges that he was the victim of discriminatory discharge because of his race, and that non-African-American assistant managers were given preferential treatment regarding discipline of LP violations.  (Am. Compl. at 7-8.)  CVS, however, asserts that plaintiff's termination was not based on his race, but rather on his insubordination and failure to participate in the LP investigation.  (Def. Br. at 13.)

To succeed on a claim of race discrimination, a claimant must establish that he was the subject of purposeful discrimination.  Weldon v. Kraft, Inc., 896 F.2d 793, 796 (3d Cir. 1990).  Where the plaintiff, as here, does not present direct evidence of discrimination, a court will apply a three-step, burden-shifting analysis.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); see Sheridan v. E.I. DuPont de

Nemours & Co., 100 F.3d 1061, 1065-66 (3d Cir. 1996).  To assert a prima facie case of discriminatory discharge, the plaintiff must allege that: (1) he is a member of a protected group; (2) he is qualified for the position; (3) he was subject to an adverse employment action; and (4) other similarly situated individuals not in the protected group received better treatment.  Burdine, 450 U.S. at 254.  If the plaintiff succeeds, then the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  If the defendant makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated nondiscriminatory rationale was a mere pretext for discrimination.  Id.

### A. Plaintiff fails to show a prima facie case of employment discrimination

The parties do not dispute that plaintiff can satisfy the first three prongs of a prima facie case of employment discrimination plaintiff: (1) is African-American, and thus is part of a protected class; (2) received positive reviews and at least one performance-based award during his employment at CVS, and thus appears to be qualified for his position; and (3) was terminated, and thus was subjected to an adverse employment decision.

12

The parties, however, do dispute whether plaintiff has satisfied the fourth prong of a prima facie test. To do so, plaintiff must present evidence to demonstrate that non-African-American employees of CVS were treated more favorably than African-Americans. Plaintiff contends that non-African-American assistant managers in store no. 464 were given preferential treatment in the application of LP policies. (Pl. Br. at 4-5.) He argues that, while he was terminated for "purported [LP] issues," "upper management either took no action to investigate or discourage future infractions or failed to adequately discipline" the non-African-American assistant managers plaintiff reported for LP violations. (Id. at 4-5; EEOC Charge.) CVS, on the other hand, contends that the LP violations of the assistant managers are irrelevant because there is no evidence that any other manager or assistant manager - in New Jersey or Georgia - was treated more leniently when failing to participate in an internal LP investigation. (Def. Br. at 13; dkt. entry no. 32, Def. Reply Br. at 2.)

The Court, however,

> may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

Wexler v. White's Fine Furniture, 317 F.3d 564, 574 (6th Cir. 2003); see Barzanty v. Verizon Pa., No. 06-879, 2007 U.S. Dist.

13

LEXIS 95273, at *37 (W.D. Pa. Nov. 5, 2007).  Thus, the Court will not consider CVS's argument regarding the LP investigation interview at this stage.  Plaintiff, nevertheless, must still prove by a preponderance of the evidence that a prima facie case of discrimination exists; "it does not suffice to suggest the mere possibility of discrimination."  Bullock v. Children's Hosp. of Phila., 71 F.Supp.2d 482, 490 (E.D.Pa. 1999).

Plaintiff's allegation that non-African-Americans were treated preferentially fails to support a reasonable inference of discrimination.  Plaintiff admits that he neither participated in, nor was disciplined for, any types of alleged violations for which he reported assistant managers.  (Jones Dep. at 170, 198-200.)  Plaintiff further admits that, as store manager, he had the authority to discipline the assistant managers for LP violations, and issued a counseling card to at least one of the assistant managers.  (Id. at 201.)  Accordingly, plaintiff was not similarly situated to the assistant managers.  See Bullock, 71 F.Supp.2d at 489-90 (finding employees are similarly situated when they have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").  A prima facie case requires more than mere speculation.  The Court, therefore, finds that plaintiff has not presented evidence to raise a presumption of discrimination.  As such,

plaintiff has failed to establish a prima facie case, and summary judgment will be granted in favor of CVS.

> **B. Plaintiff fails to show that the legitimate, nondiscriminatory reasons proffered by CVS to terminate his employment were a pretext for discrimination**

Even if the Court were to assume, <u>arguendo</u>, that plaintiff could establish a prima facie case of discrimination, the record demonstrates that CVS had a legitimate, nondiscriminatory reason for terminating plaintiff's employment.  CVS has proffered the nondiscriminatory explanation that plaintiff's employment was terminated because he refused to participate in the LP investigation. (Def. Br. at 5-6.)  CVS asserts that plaintiff was aware that "interfering with or failing to cooperate with any legal search or investigation" is a violation of company policy and could be grounds for termination of his employment. (DeAgazio Decl., Ex. 14, Employee Handbook; <u>id.</u>, Ex 15, 2-8-06 Acknowledgment.)  The Court finds that CVS has thus produced evidence of a nondiscriminatory reason for plaintiff's termination to rebut the presumption of discrimination that would be created by a prima facie case.  <u>See</u> <u>Pollock v. Am. Tel. & Tel. Long Lines</u>, 794 F.2d 860, 863-64 (3d Cir. 1986) (finding insubordination, poor performance, and misconduct as legitimate reasons for employee discharge).

To counter this showing, "the plaintiff must prove not that the illegitimate factor was the sole reason for the decision, but that the illegitimate factor was a determinative factor in the

adverse employment decision, that is, that but for the protected characteristic," the plaintiff would not have been terminated. Fuentes, 32 F.3d at 764. The plaintiff may prevail by showing "pretext," or simply by showing, through direct or circumstantial evidence, that the challenged action resulted from discrimination. Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 215 n.5 (3d Cir. 2000). To survive summary judgment, plaintiff must present sufficient evidence to either: (1) "cast substantial doubt upon" CVS's proffered reason for terminating him "by painting them as weak, implausible, contradictory, or incoherent;" or (ii) from which a factfinder could

> reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision (e.g., by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons.)

Fuentes, 32 F.3d at 765.

The Court finds that plaintiff cannot meet this burden. Plaintiff has not produced any competent evidence to support an assertion that the stated reason for his termination was merely a pretext. Plaintiff offers no argument as to his basis for discrimination other than certain non-African-American assistant managers were not discharged for committing LP violations that are not at issue in plaintiff's case. To find disparate

16

treatment, the Court would have to determine that similarly situated non-African-Americans were treated more favorably than plaintiff. The focus, however, "is on the particular criteria or qualifications identified by [CVS] as the reason for the adverse action." Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998).[3]

CVS asserts that its "particular criteria" for terminating plaintiff was his failure to participate in the LP investigation. (Def. Br. at 13; Def. Reply Br. at 8.) Plaintiff admits he can provide no evidence to demonstrate or even suggest that any non-African-American store managers – in any of the CVS stores – were not discharged after refusing to participate in an LP investigation, nor does he offer any evidence to suggest that his refusal to cooperate was not the reason he was discharged. (Jones Dep. at 160-61.) See Jordan v. Allgroup Wheaton, 218 F.Supp.2d 643 (D.N.J. 2002), aff'd, 95 Fed.Appx. 462 (3d Cir. 2004); Bullock, 71 F.Supp.2d at 489-90; Newring v. PNC Corp., No. 01-1973, 2006 U.S. Dist. LEXIS 18136, at *24 (W.D. Pa. Mar. 28,

---

[3] Although plaintiff argues that the infractions committed by the assistant managers were equal in significance to his misconduct, plaintiff's subjective beliefs are not relevant to this analysis. See Simpson, 142 F.3d at 147 ("The employee's positive performance in another category is not relevant, and neither is the employee's judgment as to the importance of the stated criterion.") (internal citations omitted). Plaintiff's cited events do not relate to how CVS, in its own view, should discipline a store manager who has refused to cooperate with a company investigation relating to a missing deposit.

2006) (finding, to be similarly situated, "employees must have engaged in the same behavior, and the employer must have no reason for treating them differently"). Moreover, from 2004 through 2006, four supervisory employees based in the Atlanta region, two of whom are Caucasian, were discharged for failing or refusing to cooperate in internal company investigations. (Dkt. entry no. 24, Henderson Decl. ¶ 2.) See Simpson, 142 F.3d at 646-47 (holding plaintiff may not "pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably").[4]

    The Court concludes that plaintiff has not shown that there was an illegitimate factor that was determinative, or casts doubt upon CVS's stated reason, in the decision to terminate his employment. Therefore, even viewing the facts in the light most favorable to plaintiff, there are no genuine issues of material fact existing as to the circumstances surrounding the termination of plaintiff's employment from which a reasonable jury could infer invidious discrimination. See Hargrave v. County of Atl., 262 F.Supp.2d 393, 410 (D.N.J. 2003) (holding summary judgment

---

[4] CVS further argues that because plaintiff was terminated in Georgia, it is irrelevant how the loss prevention policies were enforced in New Jersey. (Def. Reply Br. at 6-7.) The Court, however, finds that plaintiff was terminated by the company – CVS, which is headquartered in Rhode Island with stores throughout the country – and it is therefore not necessary to consider the place of termination.

should be "granted unless the party opposing the motion provides evidence such that a reasonable jury could return a verdict in favor of the nonmoving party") (citations and quotations omitted); see also Gaston v. New Jersey, No. 05-3006, 2008 U.S. Dist. LEXIS 13743, at *42-*43 (D.N.J. Feb. 21, 2008), aff'd, No. 08-1831, 2008 U.S. App. LEXIS 23576 (3d Cir. Oct. 30, 2008).

## CONCLUSION

Plaintiff can neither establish a prima facie case of discrimination nor offer sufficient evidence to rebut the legitimate nondiscriminatory reasons for his termination.  For the reasons discussed supra, the Court will enter summary judgment in favor of CVS.  The Court will issue an appropriate order and judgment.

        s/ Mary L. Cooper
        **MARY L. COOPER**
        United States District Judge

Dated:   December 19, 2008